IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| REGINA JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-763 (RDA/JFA) |
| | ) |
| LLOYD J. AUSTIN III, *in his official capacity as Secretary, Department of Defense,* | ) ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Lloyd J. Austin III's ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"). Dkt. 19. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support, Dkt. 20, and Plaintiff Regina Jackson's ("Plaintiff") *pro se* Second Amended Complaint, Dkt. 18, this Court GRANTS the Motion to Dismiss for the reasons that follow.[1]

---

[1] Plaintiff also has pending a Motion to consider Exhibits A through D as Evidence. Dkt. 12. That Motion is GRANTED-IN-PART and DENIED-IN-PART. The Motion is granted insofar as both parties submitted the same exhibits for consideration by the Court on review of the Second Amended Complaint and, therefore, the Court has considered them. The Motion is denied insofar as Plaintiff seeks to have the exhibits "admitted as evidence" because such a request is premature.

I. BACKGROUND

A. Factual Background[2]

*Pro se* Plaintiff Regina Jackson alleges that Defendant retaliated against her on the basis of her protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Dkt. 18 at 19. Specifically, Plaintiff alleges that Defendant retaliated against her by unlawfully disclosing her Equal Employment Opportunity ("EEO") activity and by initiating removal proceedings against her. *Id.* at 19-21.

Plaintiff, an African American woman, began working as a financial manager in the Financial Management Directorate ("FMD") at the Washington Headquarters Service ("WHS") for the Department of Defense in 2009. *Id.* at 2. In 2010, she filed an EEO complaint against her then-supervisors at WHS, claiming that they subjected her to a hostile work environment ("EEOC HWE Charge").[3] *Id.* at 3. On January 3, 2011, Roberta Lowe became the new Director of the FMD and Plaintiff's third-level supervisor. *Id.* at 4, 5. Ms. Lowe learned of Plaintiff's EEOC HWE Charge in January 2011 from Plaintiff's first-level supervisor and later participated in settlement discussions before the EEOC. *Id.* at 5. Shortly after Ms. Lowe became Plaintiff's supervisor, Plaintiff inquired about starting a one-year temporary detail assignment to the Office of the Under Secretary of Defense, Comptroller ("OUSDC"). *Id.* at 4. Ms. Lowe approved Plaintiff's requested assignment to the OUSDC under the supervision of Donjette Gilmore for six months. *Id.* Ms. Lowe, Ms. Gilmore, and Plaintiff agreed to discuss the possibility of extending

---

[2] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Second Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Plaintiff refers to this initial complaint and related administrative proceedings as her "prior EEO activity." Dkt. 18 at 20.

2

Plaintiff's detail assignment at the six-month mark. *Id.* Plaintiff began working at the OUSDC on January 24, 2011. *Id.*

Plaintiff alleges that, in July 2011, six months into the detail assignment, Ms. Lowe informed Ms. Gilmore of Plaintiff's EEOC HWE Charge, *id.* at 5, explaining that the FMD "did not want [Plaintiff] to come back" and requesting an extension of the detail assignment "to prevent her return," *id.* at 4. Plaintiff also claims that Ms. Lowe disclosed details regarding Plaintiff's EEO activity to various personnel and "management officials" within the OUSDC and WHS, *id.* at 7, 8, 12, 17, as well as to several former and prospective employers, *id.* at 11, 12, 14. Additionally, Ms. Lowe allowed a letter of reprimand to remain in Plaintiff's "official personnel folder even after the 2-year period had expired." *Id.* at 12. Plaintiff alleges that Ms. Lowe's disclosures resulted in the initiation of removal proceedings against her, *id.* at 12, 17, and in addition, the interference with Plaintiff's prospective employment, *id.* at 7, 14. Plaintiff was eventually removed from federal service for lack of candor on January 17, 2013, after management officials discovered discrepancies in Plaintiff's EEO testimony and her SF-86 security application. Dkt. Nos. 18 at 5, 8-9; 20-1, Ex. C at 2-3.[4]

B.  Procedural Background

Prior to her removal from federal service, Plaintiff filed a formal Charge of Retaliation ("EEOC Disclosure Charge") with her agency's EEO Office on July 27, 2012, alleging that Ms.

---

[4] The various administrative decisions, *see* Dkt. 20-1, Exs. A-K, regarding Plaintiff's EEO charges at issue are documents that are "integral to the [C]omplaint," and the Court can consider them in ruling on Defendant's Motion to Dismiss since there is no dispute as to their authenticity. *Tucker v. Sch. Bd. of the City of Va. Beach*, No. 2:13-cv-530, 2014 WL 5529723, at *8 n.4 (E.D. Va. Oct. 31, 2014) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see also Prosa v. Austin*, 2022 WL 394465, at *14 (D. Md. Feb. 8, 2022) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." (quotation omitted)).

3

Lowe's disclosures regarding Plaintiff's prior EEO activity were retaliatory. Dkt. 18 at 6, 11; *see also* Dkt. 20-1, Ex. A at 1. After receiving a "final decision" from the EEO Office that Plaintiff "was unable to establish a nexus between the prior protected activity and any adverse employment action," Plaintiff filed an appeal with the Equal Employment Opportunity Commission ("EEOC"), which reversed the final decision on June 22, 2018. Dkt. 20-1, Ex. D at 2. Following reversal, the EEO Office awarded Plaintiff $4,226.10 for her claim on November 24, 2020. Dkt. 20-1, Ex. E at 12. Plaintiff appealed the damages decision, however, because the EEO Office denied her request for attorneys' fees… as she had proceeded *pro se*. Dkt. 20-1, Ex. G at 2. Plaintiff received a final decision from the EEOC on the damages issue on March 14, 2023, in which Plaintiff was awarded an additional $10,000. *Id.* at 2-3. At that point, Plaintiff had 90 days to file a civil action concerning the Disclosure Charge. *Id.* at 4.

After her removal from federal service in 2013, Plaintiff filed a separate Charge of Retaliation ("MSPB Removal Charge") with her agency's EEO office, alleging that her removal from federal service was both discriminatory and retaliatory. Dkt. 20-1, Ex. H at 1; *see also* Dkt. 20-1, Ex. J at 6. On May 29, 2014, Plaintiff appealed the EEO Office's decision with a mixed-case appeal to the Merit Systems Protection Board ("MSPB"), which affirmed the EEO Office's decision and held that "[t]he agency's action removing [Plaintiff] must be sustained." Dkt. 20-1, Ex. H at 1, 30. Plaintiff filed a petition with the MSPB for review of its initial decision, but the Board members could not agree on the disposition of the petition; thus, the initial decision became the MSPB's final decision on September 2, 2016. Dkt. 20-1, Ex. I at 1. Plaintiff filed another petition for review with the EEOC, which disagreed with the MSPB, found that Plaintiff's removal "was motivated by reprisal," and referred Plaintiff's claim back to the MSPB for the issuance of a new decision. Dkt. 20-1, Ex. J at 1, 12. On August 8, 2023, the MSPB adopted the EEOC's

4

findings and issued a final decision ordering Plaintiff's reinstatement to her position, along with backpay and benefits. *See* Dkt. 20-1, Ex. K at 1-4. At that point, Plaintiff could file a petition for review with the Federal Circuit within 60 days, with an appropriate U.S. district court within 30 days, or with the EEOC within 30 days. *Id.* at 6-10.

Plaintiff filed the instant civil suit on June 12, 2023, initially basing her Title VII claim primarily on her removal from federal service and seeking, among other forms of relief, declaratory judgment that such removal violated Title VII. Dkt. 1 at 7-8. On October 30, 2023, Defendant moved to partially dismiss Plaintiff's claims for lack of jurisdiction, explaining that Plaintiff's MSPB Removal Charge was still pending before the MSPB so this Court lacked jurisdiction over claims pertaining to her removal. Dkt. 5 at 8-9.

Soon after, Plaintiff filed an Amended Complaint ("First Amended Complaint") on November 20, 2023, asserting that she "is absolutely not litigating or appealing the MSPB Case [concerning her removal from federal service] . . . and no part of it should be litigated in this Court." Dkt. 7 at 4. Even so, allegations pertaining to Plaintiff's removal remained scattered throughout the First Amended Complaint. *See, e.g.*, *id.* at 12 (alleging that "after reporting discrimination . . . to the EEOC, Ms[.] Jackson was subjected to termination of her 33 year stellar employment in the Federal government"). Defendant again moved to dismiss Plaintiff's First Amended Complaint on December 4, 2023, noting that Plaintiff's concession that her removal is not at issue narrowed the scope of the case significantly. Dkt. 9 at 1. Construing Plaintiff's First Amended Complaint to rest solely on allegations of Ms. Lowe's disclosures, Defendant contended that the First Amended Complaint should be dismissed for failure to allege that such disclosures, standing alone, caused Plaintiff any actionable harm. Dkt. 9 at 1. In response, Plaintiff filed both an opposition to the motion to dismiss and a motion for leave to file a second amended complaint.

5

Dkt. Nos. 11; 14.  On January 3, 2024, Defendant consented to Plaintiff's amendment of her complaint, and the Court granted Plaintiff's motion the following day.  Dkt Nos. 15; 16.

Plaintiff filed the instant Second Amended Complaint on January 29, 2024, alleging, among other things, that Ms. Lowe's disclosure of Plaintiff's prior EEO activity to various individuals led to the initiation of removal proceedings against her.  Dkt. 18 at 19.  On February 12, 2024, Defendant filed a Motion to Dismiss, Dkt. 19, and a Memorandum in Support, Dkt. 20.  To date, Plaintiff has not responded in any capacity to Defendant's Motion to Dismiss despite the grant of two motions for extension of time by the assigned U.S. Magistrate Judge.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action.  A district court must dismiss an action over which it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), (h)(3).  In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper.  *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion.  First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219.  Under this method of attack, all facts as alleged by the plaintiff are assumed to be true.  *Id.*  Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings.  *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).  In such a case, "[n]o

6

presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977).

## B.  Rule 12(b)(6) Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). However, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Prosa*, 2022 WL 394465, at *14 (quotation omitted).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). Even so, that a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.  ANALYSIS

Defendant moves this Court to dismiss the instant action because Plaintiff filed her original complaint prior to exhausting her administrative remedies for her MSPB Removal Charge as required under Title VII and, as a result, the Court lacks jurisdiction over claims related to her Removal Charge. Dkt. 20 at 12. Additionally, Defendant contends that the remaining allegations pertaining to Ms. Lowe's disclosures of Plaintiff's EEO activity are not "actionable adverse employment actions upon which a retaliation claim could proceed." *Id.* at 17. The Court will address each argument in turn.

#### A.  Plaintiff's Administrative Exhaustion

Before filing a Title VII suit in federal court, a plaintiff must first exhaust her administrative remedies with the EEOC. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the [EEOC]."). As in the instant action, "[a] federal employee who asserts both discrimination in violation of Title VII and an 'adverse employment action' asserts a 'mixed case' for which relief may be sought by filing a 'mixed case complaint' with her employing agency's EEO office or by filing a 'mixed case appeal' directly to the MSPB." *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009) (citations omitted). The aggrieved employee must then exhaust the

selected route and obtain a "judicially reviewable" decision before pursuing relief from a federal district court. 5 U.S.C. § 7703(b)(2); *see also Howland v. U.S. Postal Serv.*, 209 F. Supp. 2d 586, 590 (W.D.N.C. 2002) ("Having chosen that option, [Plaintiff] was required to exhaust [her] claims in that forum before filing a civil action." (quoting *McAdams v. Reno,* 64 F.3d 1137, 1142 (8th Cir.1995))).

Failure to exhaust administrative remedies with the EEOC or the MSPB will result in the dismissal of a plaintiff's Title VII claim. *See Wailes v. DeJoy,* No. 7:22-cv-12, 2023 WL 2695151, at *6 n.4 (W.D. Va. Mar. 29, 2023) (noting that "a plaintiff must plausibly allege that she exhausted administrative remedies to withstand a motion to dismiss"). Moreover, where the original complaint was filed before exhaustion was complete, the filing of an amended complaint after the issuance of a final administrative decision does not cure a failure-to-exhaust defect. *See Martinez v. United States*, No. 5:14-0102, 2016 WL 11483866, at *6 (S.D. W. Va. Jan. 19, 2016) ("Although Plaintiff filed an Amended Complaint on May 27, 2014, which asserted nearly identical allegations as his initial Complaint, such an amendment does not cure his failure to exhaust prior to filing suit."); *see also Hardin v. Hunt*, No. 21-7195, 2023 WL 3969989, at *3 (4th Cir. June 13, 2023) ("The only 'cure' for failure to exhaust . . . is the filing of a new action once exhaustion is complete.").

Here, Defendant asserts that this Court lacks jurisdiction over Plaintiff's retaliation claims related to her removal from federal service because Plaintiff filed the instant civil suit two months *before* receiving a final decision on her MSPB Removal Charge. Dkt. 20 at 13-15. Upon review of the record, the Court agrees.

Before filing the instant suit, Plaintiff exhausted the administrative process for a Title VII claim based on Ms. Lowe's disclosures of her prior EEO activity but failed to exhaust the

9

administrative process for a Title VII claim based on Plaintiff's removal from federal service. As alleged in the Second Amended Complaint, Plaintiff filed a formal EEOC charge regarding Ms. Lowe's disclosures on July 27, 2012, and received a judicially reviewable decision regarding the Disclosure Charge on March 14, 2023. Dkt. 18 at 2, 11; *see also* Dkt. 20-1, Ex. G. As required, Plaintiff filed this civil suit within ninety (90) days of receiving the EEOC's decision on June 12, 2023. Dkt. 1. Plaintiff also lodged a formal EEO charge regarding her removal from federal service on May 29, 2014 with the MSPB, alleging that such removal was both discriminatory and retaliatory. Dkt. 20-1, Ex. H at 1; *see also* Dkt. 20-1, Ex. J at 6. She received a judicially reviewable decision from the MSPB regarding the Removal Charge on August 8, 2023—two months *after* she filed the instant civil action on June 12, 2023. Dkt. 20-1, Ex. K at 1; *see also* Dkt. 1. Accordingly, this Court lacks jurisdiction over Plaintiff's Title VII claims to the extent they fall within the scope of Plaintiff's MSPB Removal Charge. *See Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.").

Although Plaintiff has failed to respond to the currently pending motion to dismiss, in deference to Plaintiff's *pro se* status, the Court reviews Plaintiff's Opposition to Defendant's previous motion to dismiss for purposes of this Motion. Dkt. 17. In that Opposition, Plaintiff attempted to distance her claims from the Removal Charge by asserting that "the adverse action here is the *initiation* of the removal proceedings," and not the removal itself. Dkt. 17 at 10. However, "[i]t is well-settled in the Fourth Circuit that the 'touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same.'" *Kennebeck v. Napolitano*, No. 1:13-cv-88, 2013 WL 3368960, at *4 (E.D. Va. July 3, 2013) (quoting *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 595 (4th Cir. 2012)); *see also Chacko v. Patuxent*

*Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (holding that, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient").

Despite Plaintiff's assertions otherwise, the initiation of removal proceedings against Plaintiff and the actual removal itself are reasonably related factual allegations. In her Second Amended Complaint, Plaintiff alleges that Ms. Lowe notified other WHS management officials about Plaintiff's prior EEO activity as a retaliatory act to initiate her removal from federal service. *See* Dkt. 18 at 8-10 (alleging that "Ms Lowe used my EEO protected activity for disciplining, initiating the investigation for gathering evidence to retaliate against me, and cause the management officials to take a personnel action . . . . [Ms. Lowe] asked could she discipline me with dismissal"); *see also id.* at 11 (claiming that WHS management officials "impermissibly used [her] EEO proceedings to seek more evidence to retaliate against [her]" and that Ms. Lowe's disclosures to management officials "was the motivating factor for her fomenting the retaliatory investigation"). Likewise, Plaintiff's mixed-case complaint for the MSPB Removal Charge included allegations that Ms. Lowe disclosed Plaintiff's prior EEO activity to other WHS management officials, Dkt. 20-1, Ex. J at 3, 7-9, and that these officials made the decision to remove Plaintiff from federal service after discovering that Plaintiff made false representations in relation to her prior EEO activity, Dkt. 20-1, Ex. H at 16-17; *see also* Dkt. 20-1, Ex. J at 10. As such, any allegations of conduct leading to the "initiation" of removal proceedings against Plaintiff can be expected to be the subject of a civil action that follows the exhaustion of administrative remedies pertaining to Plaintiff's MSPB Removal Charge, and not the EEOC Disclosure Charge.

Accordingly, this Court lacks jurisdiction over Plaintiff's Title VII claims to the extent that they are based on her removal from federal service because Plaintiff failed to exhaust those claims

11

before filing this action. Therefore, Plaintiff may not advance her retaliation claims based on allegations that Ms. Lowe's disclosures to WHS personnel and management officials led to the initiation of removal proceedings against her or investigations related to her removal. *See Kantor v. Pompeo*, 400 F. Supp. 3d 464, 470 (E.D. Va. 2019) (dismissing a Title VII claim under Rule 12(b)(6) where Plaintiff failed to exhaust his administrative remedies with the EEOC). Thus, Defendant's Motion to Dismiss will be granted in this regard.[5]

### B.  Failure to State a Claim

To state a *prima facie* retaliation claim under Title VII, a plaintiff must sufficiently allege "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019) (internal citations omitted). Although a plaintiff is not required to state a *prima facie* claim in her operative complaint, it is the most common means for a plaintiff to attempt to establish a plausible claim of retaliation sufficient to defeat a motion to dismiss.

Taking all facts alleged in the Second Amended Complaint as true, Plaintiff alleges that she engaged in protected conduct when she reported a hostile work environment to her agency's

---

[5] Plaintiff alleges two additional claims that fall outside the scope of her EEOC Disclosure Charge because she did not raise them during the underlying administrative proceedings: (1) Ms. Lowe disclosed Plaintiff's EEO activity to a potential employer, the Security Exchange Commission, in October 2012 and caused that employer to cease communications with Plaintiff, Dkt. 18 at 12, 14, and (2) Ms. Lowe failed to remove a letter of reprimand from her official personnel folder for three years, *id.* at 12. As Defendant notes, Dkt. 20 at 16 n.14, Plaintiff cannot raise these allegations now for the first time because she did not properly exhaust them in the underlying administrative proceedings. *See Chacko*, 429 F.3d at 509 ("[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge."). Thus, the Motion to Dismiss is also granted with respect to those allegations.

EEO office in 2010 ("EEOC HWE Charge"). Dkt. 18 at 3; *see also Jones v. HCA,* 16 F. Supp. 3d 622, 634 (E.D. Va. 2014) (holding that "filing an EEOC charge is protected activity"). Plaintiff then alleges that Ms. Lowe's disclosures of Plaintiff's EEO activity to various individuals during the next two years constitute adverse action. *See generally* Dkt. 18. Conversely, Defendant contends that these alleged acts do not meet the "materially adverse" standard required to state a retaliation claim, and that, as a result, Plaintiff's Second Amended Complaint should be dismissed. Dkt. 20 at 16-20.

In the Title VII retaliation context, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006). The resulting "harm must be a '*significant detriment*'" to the plaintiff and "not 'relatively insubstantial or trivial.'" *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N.*, 548 U.S. at 68) (emphasis original). Typically, "[a]n adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc v. Ellerth*, 524 U.S. 742, 761 (1998). Reputational injury that "invoke[s] comparable harm" to an "ultimate employment action" so as to cause "irreparable damage to the plaintiff's reputation or ability to perform his work[] can potentially rise to actionable retaliation." *Chappell v. Sch. Bd. of City of Va. Beach*, 12 F. Supp. 2d 509, 516 (E.D. Va. 1998). But "misunderstandings, personality conflicts, job performance evaluations, and purely administrative matters" do not. *Id.* The Court will address each of Plaintiff's remaining alleged retaliatory incidents in turn.

Plaintiff first alleges that Ms. Lowe informed Plaintiff's temporary detail supervisor, Ms.

Gilmore, about her EEO activity and requested an extension of Plaintiff's detail "as a retaliatory act." Dkt. 18 at 5. "But [Plaintiff's] claim fails for a simple reason: if an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action." *Laird*, 978 F.3d at 894. Plaintiff herself originally requested a one-year detail assignment to the OUSDC. Dkt. 18 at 5. Moreover, prior to any disclosure of Plaintiff's EEO activity, Ms. Lowe, Ms. Gilmore, and Plaintiff had already agreed to a possible extension of the detail once the six months ended. *Id.* at 4. At the six-month point in July 2011, Ms. Lowe reached out to Ms. Gilmore, disclosed Plaintiff's "EEO complaint against the WHS," and asked if Ms. Gilmore "would be willing to have Plaintiff work at [OUSDC] 'until Plaintiff found a new position.'" *Id.* at 5, 10. Although Plaintiff explicitly agreed to the possibility of an extension of her detail assignment upon discussion, *id.* at 4, Plaintiff "felt her professional reputation with the agency had been besmirched" after hearing that Ms. Lowe had shared her EEO activity, *id.* at 6. The alleged disclosure to Ms. Gilmore, while imprudent, does not allow for an inference of sufficient adversity because it did not lead to "a significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities." *Hoyle*, 650 F.3d at 337 (quoting *Ellerth*, 524 U.S. at 761). Nor does Plaintiff allege any actual reputational harm, but merely her subjective feelings that her reputation had been besmirched. This cannot constitute material adversity. Here, Plaintiff remained in the same detail assignment that she herself requested for more than a year after Ms. Lowe's alleged disclosure to Ms. Gilmore. *See id.* at 4, 13 (Plaintiff was still working under Ms. Gilmore's supervision in December 2012). The alleged disclosures to Ms. Gilmore, without more, are therefore insufficient to maintain a Title VII retaliation claim. *See Snyder v. Azar*, No. TDC-18-0511, 2020 WL 4605223, at *12 (D. Md. Aug. 10, 2020) (rejecting plaintiff's argument that supervisor engaged in *per se* retaliation by disclosing

employee's EEO activity to another manager), *aff'd sub nom*, *Snyder v. Becerra*, No. 20-2073, 2021 WL 5505403 (4th Cir. Nov. 24, 2021).[6]

Plaintiff also alleges that Ms. Lowe notified various other WHS management officials about Plaintiff's "EEO protected activity" throughout the Second Amended Complaint. Dkt. 18 at 7, 8, 16. More specifically, Plaintiff claims that "Ms. Lowe used [her] EEO protected activity for disciplining, initiating the investigation for gathering evidence to retaliate against [her], and cause the management officials to take a personnel action." *Id.* at 8. But "the dissemination of information about the EEO complaint" without more cannot support a Title VII retaliation claim. *Snyder*, 2020 WL 4605223, at *12. And Plaintiff does not claim that she suffered additional consequences that cross the materially adverse threshold. "[M]ere investigations by [a] plaintiff's employer cannot constitute an adverse action because they have no adverse effect on plaintiff's employment." *Cox v. Red Hat, Inc.*, No. 1:23-cv-766, 2024 WL 98162, at *12 (E.D. Va. Jan. 9, 2024) (quoting *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001), *aff'd*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001)). Additionally, as discussed *supra*, Plaintiff cannot rest her Title VII claims on her removal from federal service because she failed to exhaust the administrative process for her MSPB Removal Charge prior to filing the instant action. Thus, Plaintiff's allegations of Ms. Lowe's disclosures to various WHS personnel and management officials are insufficient to support a Title VII retaliation claim.

---

[6] Moreover, that Ms. Gilmore allegedly became "standoffish" towards Plaintiff following a meeting with Ms. Lowe in December 2012 (which occurred more than a year after the initial July 2011 disclosures to Ms. Gilmore), Dkt. 18 at 13, makes no difference. *See Evans v. Int'l Paper Co.*, No. 3:16-cv-01215, 2018 WL 1558870, at *12 (D.S.C. Mar. 31, 2018), *aff'd*, 936 F.3d 183 (4th Cir. 2019) (holding that "the snubbing by supervisors and co-workers is not an actionable materially adverse event"); *see also Burlington N.*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

Finally, Plaintiff alleges that Ms. Lowe disclosed Plaintiff's EEO activity to personnel at Plaintiff's former places of employment—the Air Force and the Joint Staff.  Dkt. 18 at 13, 16, 18.  Actions taken "to warn [an individual's] subsequent employer about the EEOC Charge against" their current employer can "constitute . . . adverse employment actions as defined in *Burlington Northern*."  *Coles v. Deltaville Boatyard, LLC*, No. 3:10-cv-491, 2011 WL 4804871, at *6 (E.D. Va. Oct. 11, 2011) (explaining that an employee departing under unpleasant circumstances would "hesitate in filing an EEOC charge if he knows that any resulting enmity will follow him to his next job").  But allegations regarding "concerns of 'unpleasantries' or enmity following Plaintiff . . . are non-existent" here.  *Valerino v. Holder*, No. 1:11-cv-1124, 2013 WL 12432290, at *13 (E.D. Va. Feb. 20, 2013), *aff'd*, 539 F. App'x 256 (4th Cir. 2013).  Both the Air Force and the Joint Staff employed Plaintiff more than a decade before Ms. Lowe's disclosures, Dkt. 18 at 16, and Plaintiff does not allege any intention to return to those organizations.  Furthermore, Plaintiff does not allege that she suffered any collateral consequences following Ms. Lowe's disclosures to the Air Force and the Joint Staff.[7]  As such, these disclosures do not rise to the level of an actionable adverse action.

In sum, because Plaintiff's allegations are insufficient to establish that she experienced "materially adverse" action, Plaintiff does not state a claim for retaliation under Title VII.  Accordingly, the Court will grant Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint without prejudice.[8]

---

[7] To the extent that Ms. Lowe disclosed Plaintiff's EEO activity to her former employers to gain information that would assist in initiating removal proceedings against Plaintiff, *see* Dkt. 18 at 13, 18, such a claim would fall outside of this Court's jurisdiction because Plaintiff failed to exhaust her MSPB Removal Charge prior to this suit.  *See supra* Part III.A.

[8] Because this is the Court's first opportunity to substantively address the merits of Plaintiff's allegations, the Court cannot find at this point that further amendment is futile.  Accordingly, in deference to Plaintiff's *pro se* status, the Court will permit Plaintiff one more

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 19) is GRANTED; and it is

FURTHER ORDERED that the Second Amended Complaint (Dkt. 18) is DISMISSED WITHOUT PREJUDICE. If Plaintiff so chooses, she may file an Amended Complaint within thirty (30) days of this Order. Plaintiff is hereby WARNED that, if she fails to file an Amended Complaint within thirty (30) days, then this case will be administratively closed; and it is

FURTHER ORDERED that the Motion to Consider Exhibits A through D as Evidence (Dkt. 12) is GRANTED-IN-PART and DENIED-IN-PART.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Plaintiff, who is proceeding *pro se*, and to counsel of record for Defendant.

It is SO ORDERED.

Alexandria, Virginia
July 18, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

---

opportunity to amend to add allegations that could potentially establish the material adversity of Ms. Lowe's disclosures.